**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF VIRGINIA**
**ROANOKE DIVISION**

| | |
|---|---|
| In re:<br><br>**MACTANZ, INC.,**<br><br>Debtors. | **Chapter 11**<br><br>**Case No. 18-71255** |

**UNITED STATES TRUSTEE'S OBJECTION TO CONFIRMATION**
**OF DEBTOR'S PLAN OF REORGANIZATION**
**PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE**

The United States Trustee for Region 4 (the "UST"), by and through his counsel, objects (the "Objection") to the Debtor's Plan of Reorganization Pursuant Chapter 11 of the Bankruptcy Code filed on January 18, 2019 (the "Plan"). *See* ECF Doc. No. 453. This objection is filed pursuant to 28 U.S.C. § 586 and 11 U.S.C. §307.

## **OBJECTION**

The Debtor's Plan should not be confirmed absent an evidentiary showing by that the releases meet the high standards enunciated by the Fourth Circuit regarding releases and that the releases have been consented to by the impacted creditors.

## **FACTS**

On September 21, 2018 (the "Petition Date"), Mactanz, Inc. (the "Debtor") commenced its Chapter 11 case.

The Debtor remains in possession of its assets and continue to manage its business as a debtor-in-possession pursuant to §§ 1107(a) and 1108. To date, no trustee or examiner has been appointed in this Chapter 11 case.

On October 10, 2018, the United States Trustee filed a Notice of Inability to Appoint an Official Committee of Unsecured Creditors pursuant to § 1102(a)(1) of the Bankruptcy Code. *See* ECF Doc. No. 28.

The Debtor has operated as Mac and Bob's for close to four decades. ECF Doc. No. 65, page 4 (the Disclosure Statement). The Debtor has enjoyed financial success and high community regard for it and its owners, Bob Rotanz and Joe Dishaw. *Id. at 4-5*. The bankruptcy filing was precipitated by the filing of two class action lawsuits premised upon the Debtor's violation of the federal Fair Labor Standards Act ("FLSA"). *Id. at 5-6.* The lawsuits alleged that the Debtor's longstanding policy of having its servers and wait staff contribute 1% of their tips to the restaurants dishwashers. *Id.*

The Plan anticipates that the administrative expenses will be paid by the Bob Rotanz and Joe Dishaw Irrevocable Trust. *Id. at 11-12.* The Priority Wage Claims, comprised of the claims of the Debtor's servers and wait staff arising from the FLSA requirements that arose within six (6) months of the Petition Date, will be paid in full from the personal funds of Rotanz and Dishaw. Rotanz and Dishaw are contributing a total of $125,000 to fund plan payments to be made to the Debtor's current and former employees. *Id. at 12*. The Unsecured Claim of Wells Fargo, N.A., Class 3, which is guaranteed by Rotanz and Dishaw will continue to receive its regular monthly payment. *Id.* The Dishaw-Rotanz Joint Real Estate Partnership will continue to pay its Wells Fargo mortgage payment, of which the Debtor is a guarantor. *Id.* The Wells Fargo Guaranty Claim is Class 4. The General Unsecured Claims, Class 5, are comprised of the claims of the Debtor's servers and wait staff arising from the FLSA violations that arose between six (6) months and one (1) day and two (2) years prior to filing. *Id. at 13*. The members of Class 5 that do not opt out of the releases being provided to the Debtor, Rotanz and Dishaw will receive 14.5% of their claims; the members of Class 5 which do opt out of the releases will receive

nothing.    The Debtor summarized the expected distributions to creditors as follows:

| Class | Claim or Interest | Voting Rights | Treatment | Estimated Allowed Claims | Projected Plan Recovery |
|---|---|---|---|---|---|
| 1 | Administrative Expenses | Deemed to Accept | Paid in full in Cash | $0 | 100% |
| 2 | Priority Wage Claims | Entitled to Vote | Paid in full in Cash[1] | $73,380 | 100% |
| 3 | Unsecured Claim of Wells Fargo, N.A. | Deemed to Accept | Continue regular monthly payments, guarantee of owners | ~$89,000 | Treated outside plan |
| 4 | Wells Fargo Guaranty Claim | Deemed to Accept | Debtor will continue to make monthly rent payments to the entity which is the obligor on this debt | | Treated outside plan |
| 5 | General Unsecured Claims | Entitled to Vote | Paid in part, in cash[2] | $355,480 | Will receive either 14.5% (if grant release or fail to vote) or 0.0% (if reject release) |
| 6 | Equity Interests in Debtor | Deemed to Accept | Retained | n/a | 0% |

---

[1] Payments from the $125,000 fund contributed by Rotanz and Dishaw.

[2] Paid with funds remaining after the satisfaction of the Class 2 claims.

The Plan also provides extensive and comprehensive third-party release that, in effect, insulate the owners of the Debtor from the claims of their current and former employees from liability from potential FLSA causes of action. Specifically, the Plan provides the following third-party release:

> Notwithstanding anything contained in the Plan to the contrary, on the Confirmation Date and effective as of the Effective Date, for the good and valuable consideration provided by Rotanz and Dishaw (the "Released Parties"), the adequacy of which is hereby confirmed, including (1) the payment of Classes 1, 2 and 5 of the Plan, (2) their services as the Debtor's present and former officers, directors, managers, and advisors in facilitating the implementation of the restructuring contemplated herein, (3) their ongoing daily efforts toward the Debtor's success; and (4) their guarantees of the Wells Fargo debt and agreeing that the Wells Fargo debt not participate in Class 5 distributions, each holder of an Impaired Claim, except those holders that elect to opt-out of the Releases set forth in this section shall be deemed to conclusively, absolutely, unconditionally, irrevocably and forever release and discharge each Released Party from and covenant with each Released Party not to sue or otherwise seek recovery from such Released Party on account of, any and all claims, obligations, debts, suits, judgments, damages, rights, Causes of Action and liabilities whatsoever, including any derivative claims asserted or which could be asserted on behalf of the Debtors, whether known or unknown, foreseen or unforeseen, existing or hereafter arising, in law, equity or otherwise, that such party would have been legally entitled to assert (whether individually or collectively), based on or relating to, or in any manner arising from, in whole or in part, any action, omission, transaction, agreement or event or other occurrence taking place on or prior to the Effective Date in any way relating to the Debtors on their business and affairs, or conveyance, tort, contract, breach of fiduciary duty, violation of state or federal laws, including securities laws the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, provided, however, that the foregoing provisions of this section shall not waive, release, or otherwise affect (i) any claims, obligations, debts, rights, suits, damages, remedies, Causes of Action, and liabilities of such Persons solely to the extent of their right to receive Distributions or other treatment under the Plan; and (ii) any rights to enforce the Plan or the other contracts, instruments, releases, agreements or documents to be, or that were previously, entered into in connection with the Plan. The releases in this section apply only to the Released Parties solely in their respective

capacities as such, and include, within the foregoing, any claims or causes of action resulting from the FLSA actions described in the Disclosure Statement and Plan. ECF Doc. No. 66 (the Plan), pages 5-6.

The ballot provided to claimants gives the Classes 2 and 5 creditors the right to "opt out" of the release. Any claimant who fails to return his or her ballot is deemed to have accepted the release.

## ARGUMENT

In order for a Chapter 11 Plan to be confirmed it must comply with all applicable provisions of the Bankruptcy Code, be proposed in good faith, and its provisions must not be forbidden by law. 11 U.S.C. §§ 1129(a)(1), (a)(2) and (a)(3). It is the burden of the plan proponent to demonstrate that the plan meets those standards.

**A. The Fourth Circuit's Standards for Approval of Third-Party Releases and Exculpation Clauses (*Behrmann v. National Heritage Foundation*).**

While there is no *per se* prohibition against a Chapter 11 plan imposing releases of non-debtors by other non-debtors (such as, in this case, the release by employees of the Debtor's equity owners), those releases are not appropriate in every case, or even in most cases. *See In re A.H. Robins Co., Inc.*, 880 F.2d 694, 702 (4th Cir. 1989). Such releases are the exception not the rule, and approval of such provisions in a Chapter 11 plan "should be granted cautiously and infrequently." *Behrmann v. National Heritage Foundation*, 663 F.3d 704, 712 (4th Cir. 2011). Indeed, the cases cited by the Fourth Circuit make clear that such releases are "dramatic measure[s]," permissible only in "unique" and "extraordinary" circumstances. *Id.* (*citing Deutsche Bank AG v. Metromedia Fiber Network, Inc. (In re Metromedia Fiber Network, Inc.)*, 413 F.3d 136, 142 (2d Cir. 2005); *Class 5 Nev. Claimants v. Dow Corning Corp. (In re Dow Corning, Corp.)*, 280 F.3d 468, 657-58

(6th Cir. 2000); and *Gillman v. Cont'l Airlines (In re Cont'l Airlines)*, 203 F.3d 212-13 (3d Cir. 2000)). *See also In re Seaside Engineering & Surveying, Inc.*, 780 F.3d 1070, 1076 (11th Cir. 2015).

In *Behrmann*, the Fourth Circuit enumerated several factors that should be considered in determining whether third-party releases are appropriate, including, but not limited to, the following:

>   (a)   There is an identity of interests between the debtor and the third party, usually an indemnity relationship, such that a suit against the non-debtor is, in essence, a suit against the debtor or will deplete the assets of the estate;
>
>   (b)   The non-debtor has contributed substantial assets to the reorganization;
>
>   (c)   The injunction is essential to reorganization, namely, the reorganization hinges on the debtor being free from indirect suits against parties who would have indemnity or contribution claims against the debtor;
>
>   (d)   The impacted class, or classes, has overwhelmingly voted to accept the plan;
>
>   (e)   The plan provides a mechanism to pay for all, or substantially all, of the class or classes affected by the injunction;
>
>   (f)   The plan provides an opportunity for those claimants who choose not to settle to recover in full; and
>
>   (g)   The bankruptcy court made a record of specific factual findings that support its conclusions.

*Behrmann*, 663 F.3d at 711-712.

The Fourth Circuit also made clear that in order to support these types of releases, the Bankruptcy Court must specifically "find facts sufficient to support its legal conclusion that a particular debtor's circumstances entitle it to such relief." *Behrmann*, 663 F.3d at 706-07. Indeed, in *Behrmann*, the Fourth Circuit reversed the bankruptcy court's legal

conclusion that the releases there were permissible because the bankruptcy court failed to support its conclusions with concrete factual findings. *Id.* at 708, 712-13 (record citations omitted).

Debtor has not yet presented any factual and evidentiary support for the proposed release provision. Absent such a showing, the Court should deny confirmation of this plan.

**B. The Debtor Must Prove that its Proposed "Opt-Out" Procedure is Sufficient to Demonstrate Consent**

Debtor represents that the third-party releases proposed in the Plan are consensual under the circumstances and thus pass muster. Under the Plan and the solicitation procedures, the Third-Party Release Provisions are effective against any creditor that:

1. Abstains from voting on the Plan and does not "opt out" of the Third-Party Release Provisions; or
2. Fails to return a ballot (for any reason whatsoever, including not having received a ballot).

The courts that have permitted third-party releases in a Chapter 11 plan based upon consent alone have varied on what is required to demonstrate consent. What courts have made clear, however, is that releases of non-debtors must be accompanied by the releasing creditors' "unambiguous" consent. *See In re Congoleum Corp.*, 362 B.R. 167, 194 (Bankr. D. N.J. 2007) (quoting *In re Allowmill Dev. Corp.*, 211 B.R. 297, 507 (Bankr. D. N.J. 1997) (for a release to be consensual, the creditor must have "unamibguosly manifested assent to the release of the nondebtor from liability on its debt.")).

In *In re Arrowmill Dev. Corp.* one of the first to find consent as a stand-alone basis for allowing third-party releases, the court held that merely failing to vote or even merely voting for

the plan was insufficient to demonstrate consent. Rather, the affected creditor must unambiguously manifest assent to the release:

> [I]t is not enough for a creditor to abstain from voting for a plan, or even to simply vote "yes" as to the plan. Rather the validity of the release ... hinge[s] upon principles of straight contract law or quasi-contract law rather than upon the bankruptcy court's confirmation order. Thus, the court must ascertain whether the creditor unambiguously manifested asset to the release of the nondebtor from liability on its debt.
>
> In this case, creditor Delliturri did not vote for the plan and clearly did not manifest any asset to have his claim against John Caglianone released. Accordingly [the release provisions of the plan] do not release Mr. Caglianone from any liability he may have had to Mr. Delliturri.

211 B.R. at 507 (citations omitted).

Similarly, in *In re Washington Mutual, Inc.*, 442 B.R. 314, 355 (Bankr. D. Del. 2011), the court held that mere "opt out" procedures were insufficient, particularly with respect to creditors who did not return ballots:

> [T]he Court concludes that the opt out mechanism is not sufficient to support the third party releases anyway, particularly with respect to parties who do not return a ballot (or are not entitled to vote in the first place). Failing to return a ballot is not a sufficient manifestation of consent to a third party release. Therefore, the Court concludes that any third party release is effective only with respect to those who affirmatively consent to it by voting in favor of the Plan and not opting out of the third party releases.

*Id.* at 355 (citations omitted). *See also In re Specialty Equip. Cos.*, 3 F.3d 1043, 1047 (7th Cir. 1993) ("Unlike the injunction created by the discharge of a debt, a consensual release does not inevitably bind individual creditors. It binds only those creditors voting in favor of the plan of reorganization. As a consequence, a creditor who votes to reject the Plan or abstains from voting may still pursue any claims against third-party nondebtors."); *In re Oneida Ltd.*, 351 B.R. 79, 94 (Bankr. S.D.N.Y. 2006) (holding that the third-party release in the Plan was consensual and passed muster because it provided for releases by "checking a box" on the plan solicitation ballot); *In re Zenith Elec. Corp.*, 341 B.R. 92, 111 (Bankr. D. Del. 1999) (holding a release of a

third party's claims "cannot be accomplished without the affirmative agreement of the creditor affected"). *But see In re Indianapolis Downs, LLC*, 486 B.R. 286, 306 (Bankr. D. Del. 2013) (approving third party releases that bound certain unimpaired creditors who were deemed to accept the plan as well as impaired creditors who abstained from voting on the Plan or who voted to reject the plan and did not otherwise opt out of the releases).

More recently, the court in *In re Chassix Holdings, Inc.* was faced with a similar issue and ultimately held that the releases would only apply to: (a) any holder of a claim who voted to accept the plan, and; (b) any holder of a claim who voted to reject the plan but who affirmatively elected to provide the releases by checking the appropriate box on the ballot form – or, in other words, "opted in" the releases.  553 B.R. 64, 82 (Bankr. S.D.N.Y. 2015).  As noted by the court in *In re Sun Edison, Inc.*., 576 B.R. 453 (Bankr. S.D.N.Y. 2017), with respect to creditors who were entitled to vote but abstained, the court noted:

> Charging all inactive creditors with full knowledge of the scope and implications of the proposed third party releases, and implying a "consent" to the third party releases based on the creditors' inactions, is simply not realistic or fair, and would stretch the meaning of "consent" beyond the breaking point.

*Chassix,* 553 B.R. at 81.

"Opt out" procedures are problematic in that creditors may be caught asleep at the switch. If a creditor is truly consenting to the release provisions, then that creditor will have no problem "opting in" to the provision.  As discussed above, *Behrmann* makes clear that third-party releases are to be approved only in extraordinary circumstances.  Such releases should be the exception, not the rule.

The United States Trustee submits that the Third Party Release Provisions are, absent an extraordinary showing, impermissible as a matter of law under Fourth Circuit law.  To the extent

the Court is inclined to allow releases by consent alone, the United States Trustee requests that the Court follow those courts that require strict evidence of actual consent by the affected parties.

## **RESERVATION OF RIGHTS**

The United States Trustee reserves his rights to object to other deficiencies at the hearing to the extent the Debtor files revised versions of the plan after the date hereof, including, without limitation, objecting on the grounds that any modification to the Plan should require the re-solicitation of creditors consistent with Bankruptcy Rule 3019.

## **CONCLUSION**

For the foregoing reasons, the United States Trustee respectfully requests that confirmation be denied.

Date: February 25, 2019                    Respectfully submitted,
                                           JOHN P. FITZGERALD, III
                                           UNITED STATES TRUSTEE,
Office of the U. S. Trustee                REGION 4
Department of Justice
First Campbell Square
210 First Street, Suite 505                BY:    */s/ Margaret K. Garber*
Roanoke, VA  24011
margaret.k.garber@usdoj.gov
(540) 857-2806

CERTIFICATE OF SERVICE

I certify that on February 25, 2091, I electronically filed the foregoing with the United States Bankruptcy Court for the Western District of Virginia which caused electronic notifications of filing to be served on all registered users of the CM/ECF System that have appeared in this case.

*/s/ Margaret K. Garber*